Again, my name is Glenn Pryor, and I represent Antonio Medina-Munoz in this case. This is a case of details, and it originally happened when he was in immigration court. And when you are in an immigration proceeding, the judge has an obligation to let you know what you have, what remedies you may offer, cancellation of removal, adjustment of status, any other remedy that you may have to get a green card. And in this case, the judge was well aware of that, and there was an I-130 relative petition, which would give him immigration status. The problem with the petition was that the petitioner died during this time. And so the relative petition that had a current priority date, which would allow him to adjust status as a derivative through his wife, that petitioner died. And so under immigration law, that petition would be revoked automatically unless the attorney general, which in this case would be the immigration service, unless they would reinstate it. And so as you can see in my brief, I've got pages all the way from, let's see, pages, well, the majority of the beginning of the brief, five pages straight, cite quotes during the immigration court proceeding and the immigration district counsel's notes that this was asked for, this reinstatement. The judge gave at least one continuance and maybe a couple others to allow the immigration service to make a decision, either reinstate it or not. If he reinstates it, then Mr. Medina would be able to adjust his status and get a green card. Isn't that totally discretionary with the attorney general of the United States? Exactly. Totally discretionary. And he didn't do it. Yes, he did. But it took him five years. And that's the problem. He reinstated the wife's petition. Yes. But not this gentleman's. No, no. That's the same petition. This is the one that the father of the wife petitions for his daughter. And when the daughter is married, because the father is a U.S. citizen, when the daughter is married, that means that the spouse and the minor children are derivatives they can come to if they're following to join. They have to be following to join. And in an adjustment of status case, it's like you're standing at the border following to join your petition. Your position is the attorney general cannot grant the wife's petition and deny the husband's petition. No. The attorney general can grant the wife's petition, and that would grant the ---- Automatically. Automatically. Automatically. So in answer to my question, the AG doesn't have discretion to grant the wife's petition and deny the husband's derivative petition. True? I don't quite understand that question. He has authority to grant the wife's petition. He has authority to deny the wife's petition. Right. It's complete discretionary authority from the attorney general. And he has no discretion to deny the husband's derivative petition once he grants the wife's petition. Well, that is correct unless the husband's been robbing banks or trafficking in drugs or something else that would make the husband inadmissible. That would be. Unless he's inadmissible because of a prior felony or something like that, the AG's hands are tied. He has no discretion. He must automatically approve the husband's. Exactly. I-130. Absolutely correct. And so this reinstatement was asked for, and did Your Honors read this particular brief because it's all quoted. I can go over some of the quotes, but I don't want to waste the Court's time on it. But the initial brief, starting on page 2, I believe, cites for about four pages all the information showing that the case, even from the district counsel, they were asking at that time the Immigration Naturalization Service, or the USCIS now, to reinstate this, you know, to at least decide on it one way or the other. And the judge wanted to know. At any rate, after the continuances, and there was still no decision from the attorney general, the judge said, we're going to go ahead and I'll make an order of voluntary departure. And the judge said, I'm sure the service, the Immigration Service, would be happy to remand it once you get this decision made. The problem was that decision was never made until the year like 2004, five years later, when there was already a deportation order and my client was detained. He was eventually deported after waiting over almost a year in detention, even though there was a state from this court, but he couldn't, for health reasons, he just couldn't remain detained. And so the gist of it here is that since there is an obligation for the immigration court to wait and see on something like that, that they have to, especially when it's been asked for, that waiting five years for a decision is really, it's really not in good faith from the Immigration Service to do that. And any times of voluntary departure or motions to reopen should have been told during this period. This is something, he had a prior counsel. When I put the, again, we asked for reinstatement in 2004, it was decided probably within a few months after that. So it was when we pushed him and when we were before the district court, then the Immigration Service decided to respond. After we got that, the reinstated I-130 petition, then we asked to reopen the case with the board. And because of the time factors, we have to get a joint motion with the Immigration Service, and they decided not to join in any motion. And that effectively time bars Mr. Medina. And now he's in Mexico. He's got a 10-year bar in order to adjust his status. So he will not be able to be with his family for the next 10 years because he was deported because of this. When this thing could have been taken care of right at the very beginning and to get a decision from the service. So I think five years of waiting for a decision when it was continually asked for is really in bad faith. Thanks. Thank you. Good morning. Okay, Mr. Pickley. Counsel has again repeated this mantra of a five-year delay. There was no five-year delay. There was no petition to reinstate this lapsed visa petition, as the magistrate judge so found after considering the record. Time and again, the petitioner was asked, where is your request to reinstate this relative petition? It never was produced. If one has to cite two informal, in-court, handwritten notes taken by INS trial attorneys who are writing down what opposing counsel tells them, and to construe that as evidence of a five-year delay is really stretching things. Now we've got, it's all over, and the wife is entitled to adjustment of status. Maybe it's been adjusted. I don't know. I don't know either. And he would be entitled to adjustment of status, but he can't get here because he's been deported. Is that correct? There is a 10-year bar. He is separately barred from adjustment of status because he was an illegal entrant, because he was inadmissible for having engaged in fraud, which is in our brief. What fraud was that? He had earlier, Your Honor, applied for an unusual form of relief called registry, and INS ultimately denied it to him, finding that he made material, he had false documents and made material representations about his family. Registry was a type of suspension of deportation? No. Registry is the creation of a record of lawful permanent residence when the actual green card or other evidence is missing. And I'm furiously hunting for my squib on registry because this doesn't come up very often. But there are requirements to obtain registry, and in this case, the INS adjudications department denied registry based on Mr. Medina's fraud. So that fraud independently renders him inadmissible. But let's assume that he were still eligible to adjust status, which he is not. The only mechanism by which he could convert that adjustment of status into lawful permanent residence status would be for the immigration service, ICE, to jointly move the BIA to reopen the proceedings. In this case, there is a written, reasoned decision by the INS or the ICE district counsel to not declining Mr. Medina's request to participate in the joint motion to reopen, citing the various factors that have been mentioned today. Well, in a way, that, I mean, then you do go back to the points that you made, that he had engaged in fraud. In other words, I suppose it's really saying he's inadmissible or he's not he's at least ineligible for adjustment of status. I mean, I assume that's why you're not joining the motion to reopen. Correct. That is correct. He's barred for a variety of reasons. And that's why we argued, that's why we made a motion at the outset of this appeal to dismiss for mootness. The Court wanted to proceed to fuller briefing. That has been our core argument and remains the core argument. This case is moot. It began as a habeas petition in district court. Petitioner sought only two forms of relief, a stay of his deportation and Let's cover that, though. If the Real ID Act has intervened, if the Real ID Act says we're supposed to treat his habeas case as a timely petition for review of the BIA decision, then aren't we really reviewing the BIA's order of removal? So what relief he has for the district court doesn't matter as for mootness. Your Honor's question is the same sort of question that we're asking ourselves now as we're all adjusting to the Real ID Act. Section 106 of the Real ID Act says the habeas petition challenging a final order of removal shall be transferred to the circuit unless there is another part of it that is not related, not a challenge to the order, the final order of removal. And that stays, apparently, in district court as the habeas. So in this case, as the magistrate judge in the R&R made a specific finding, and as if we agree, the habeas petition was not a challenge to this man's final order of removal. He was seeking collateral relief to enable him to, he thought, work towards adjustment of status. Well, it might be a little of both. I mean, I can understand how it might be moved as a habeas petition because some of the relief he sought was not reviewed. But did he in any degree seek review of his removal? If so, we've got to treat that part of it as a petition for review. He did go to the BIA. He lost. Later, the BIA's final order in this case is found at supplemental excerpt of record, page 16, a decision of the BIA dated June of 2003, asking for reopening of his proceedings. So it's really the denial of the motion to reopen that makes the final order? Is that what you're saying? If the Court interprets this case as being in part a challenge to his final order of removal, which is far from clear, then apparently this BIA order from 2003 would be the last order of the BIA. And then we could look at the petition to reopen and the board's reasons for denying that, which you really don't address because you're saying it's all defaulted and they can't do it anyway. Actually, we do address it. And I apologize if my brief was not clear on that. Again, the jurisdictional question we're addressing is new to us and we're trying to wade through it. As I said in one point in the brief, this Court might indeed choose to treat this as a hybrid case, part habeas appeal, part petition for review of the final order of removal. But he loses under either scenario. I mean, even though it's not addressed, the BIA did give some reasons. You bet they did. For denying its reopening. Absolutely. This is a written, reasoned decision stating that, look, until the Immigration Service or its successor agrees to reinstate this visa that has now been lapsed by death, there's nothing we can do. You have no remedy. The reopening of your proceedings would be a useless act. And that denial of reopening came prior to the humanitarian relief that was granted to the White. Yes, it did. And the only way that he could get this renewed would be for you to join in a motion to reopen now. That is correct. That is a discretionary decision by regulation. It is regulation, I believe, rather than statutory. I believe it's regulatory and it's been enshrined in the case law of this Court. And, of course, an adjustment of status is also discretionary relief. I guess the. Everything he's asked for is discretionary. The part of the statute that denies us jurisdiction over discretionary relief talks about any action that is placed in the discretion of the Attorney General under this subchapter or under this chapter. That is correct. Which makes me think that we can't review discretionary decisions when the discretion is conferred by statute. I'm not so sure that we can't review discretionary decisions when the discretion is conferred by the discretionary actor himself or herself. Which, again, leads me to reemphasize the case law of this circuit has reaffirmed that these discretionary grants. What case do you rely on for the fact that we can't review the denial of a. Adjustment. Motion to reopen. I joined her in a motion to reopen. Your Honor, I'd like to think that I put it in our brief. And with the Court's permission, if I fail to, I will submit a 28-J citation. I'd also like to apologize for something else that I did neglect to put in our brief. To the extent this Court may or does choose to treat this case as in part or in full a petition for review pursuant to the Real ID Act, Mr. Medina made a request to get out of incarceration, to drop the case to go back to Mexico, to volunteer, to deport himself, to self-deport, which indeed he has done. Excuse me. He did not self-deport. He was deported. He was physically expelled by the INS. What I failed to cite is the Regulation 8 CFR Section 1003.4, which says in that instance if someone has an appeal pending and they leave, that is a withdrawal of the appeal. And there's a case of this Court that goes along with that, which I neglected to cite. I thought that was changed. I mean, people can contest their deportation after they're deported. It used to be you couldn't. That's correct. But now you certainly can, can't you? If you're ordered deported and you're actually deported, you can still. Your Honor, you have corrected me, and I apologize for that misstatement. He did not. He threw up his hands and said, I give up. I want to be deported. So he asked, and they did deport him. So I think Your Honor is probably correct there, and I apologize that this Court has held that, at least to the extent it's a habeas appeal, the deportation does not bar the alien from proceeding to the United States. Once it's turned into a petition for review, at least. Yes, at least. I apologize for my misstatement there. Well, it seems that if there's life in the petition for review, we could look at the INS denied reopening and see if they make sense. If they make sense, we could deny the petition on the merits. To the extent the Court feels that this is in part or in total a petition for review, I agree with that statement. What happens to the remainder of the case, and in this case the vast, the vast bulk of this case, which is this habeas relief and the visa court? You make a good argument as you move. We argue the same. I agree. I'm still waiting for an easy and uncomplicated immigration case. Well, thanks to the Real ID Act and predecessor statutory changes, I suppose there will never be an easy immigration case. I think your time is up, and we appreciate your argument. Okay, Mr. Pryor. Yes, just a quick response. Mr. Bedina is eligible to adjust his status. If he were here today, he would be eligible. During the immigration ---- He wouldn't have any problem with the fact that he entered illegally or that he tried to urge his more than 21-year-old adopted children as ---- No, none. He won't have any trouble with that at all. Under 245I, you can come in here illegally. And if you have a petition that was dated prior to April 30th, 2001, then you're under this category called 245I. You pay a $1,000 fine, and you can adjust your status, and you are forgiven to come in. And because this application was dated, I think, back in 1982, it goes way back. I forget, but it's definitely before April 30th, 2001. And even before the first 245I of January 14th, 1998. So that petition, if he used any other petition, he would still be transferred that 245I to him. In this case, he doesn't have to transfer anything. He's 245 eligible. So the point that he came in illegally will not stop him whatsoever, unless the petition was after April 30th, 2001, then it would stop. And then as far as the 249, this registry that you were here before 1972, all that was addressed in the immigration court proceedings. And District Counsel Peck, Robert Peck, even when he was asked, and that's on page 6 of my brief referring to L456 of the record, says, If the service chooses to grant the humanitarian waiver and to adjust her, then I'm satisfied that he's eligible to adjust with her. And at that point, if I don't have anything to the contrary, I would be inclined to terminate it to conclude the matter. I'm not trying to just get rid of this guy. And also a District Counsel, he, in our brief, says the same thing. And that there was no, the only reason the charging document, the notice to appear or the order to show cause only addressed his, he was here without permission. And when he's here without permission, his only remedies would be adjustment of status if he's 245 eligible, or cancellation of removal, or voluntary departure, something like that. And anything else, the Immigration Service would have brought that up, and it was already in their records. So he is eligible if he were here. It's the voluntary departure problem and his deportation now that is, because he's in Mexico and he can't come back here, that's the 10-year period. If he had chosen to voluntary depart when he was granted voluntary departure, how long would he be barred? Would he be barred at all from re-entering? I didn't. He's barred for 10 years now, but he did have some windows when he could have departed voluntarily under his voluntary departure grants. How long would that have kept him out? I believe it would have still been 5 or 10 years. Okay. Thank you. Thank you. Madonna Munoz will be submitted.
judges: Canby, Gould, Bea